UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GERBER OTTONOIEL G.R.,

Petitioner,

v.

TONYA ANDREWS, WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,

Respondents.

No. 1:26-cv-08505-TLN-CKD

A # 248-004-408

**RELEASE ORDER**

This matter is before the Court on *pro se* Petitioner Gerber Ottoniel G.R.'s[1] ("Petitioner") Petition for Writ of Habeas Corpus ("Petition"). (ECF No. 1.) Respondents filed an answer. (ECF No. 8.) Petitioner filed a reply. (ECF No. 10.) For the reasons set forth below, the Petition is GRANTED and Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

This Order does not reach the October 14, 2026 Order granting voluntary departure or provide any relief relating to Petitioner's obligations under the agreement or the consequences of failing to depart by the deadline. (ECF No. 8-1 at 3–4.)

[1] The Court omits Petitioner's full name to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

## I. Factual Background

This matter arises out of Petitioner's challenge to his civil immigration detention. (ECF No. 1.) Petitioner has been in the United States for over eight years. (*Id.* at 5.) Petitioner has worked in landscaping and irrigation for the past two years and spent the prior six years working in the construction industry.[2] (*Id.*) Petitioner works to support himself and his family. (*Id.* at 6.) He has no criminal history. (ECF No. 1 at 5; ECF No. 8-3 at 3.)

On August 21, 2026, U.S. Immigration and Customs Enforcement ("ICE") agents traveled to Baltimore, Maryland, to target a noncitizen with a criminal history. (ECF No. 8-3 at 2–3.) While "in the area," officers checked several vehicles. (*Id.*) During one "investigative stop," ICE encountered Petitioner in a vehicle, arrested him, and took him into custody. (*Id.* at 3.) Petitioner was issued a Notice to Appear the same day. (ECF No. 8-4 at 1–3.)

On October 13, 2026, Petitioner filed the instant Petition.[3] (ECF No. 1.) On October 19, 2026, the Court set a briefing schedule and ordered "[p]ending the Court's ruling on the Petition, Respondents shall not transfer Petitioner out of this District." (ECF No. 6.)

On October 21, 2026, Respondents answered and argued Petitioner was detained as a condition of voluntary departure. (ECF No. 8.) On or about October 2, 2026, the Government and Petitioner filed a joint motion for voluntary departure in immigration court. (ECF No. 8-2 at 1–4.) On October 14, 2026, an Immigration Judge ("IJ") granted voluntary departure on or before November 14, 2026. (ECF No. 8-1 at 3–5.) Respondents argue Petitioner agreed to remain detained until his voluntary departure and waived the right to appeal the voluntary departure order. (ECF No. 8 at 2; ECF No. 8-2 at 3.) Respondents requested this Court lift its Order not to transfer Petitioner outside of the district. (ECF No. 8 at 2; ECF No. 9.) On October 23, 2026, the Court modified its Order not to transfer Petitioner to "permit execution of the voluntary removal order" and required Respondents to "provide notice to this Court within three (3) court days of Petitioner's removal." (ECF No. 9.)

---

[2] Respondents do not dispute Petitioner's timeline and work history. (ECF No. 8.)

[3] The same day, Petitioner filed a motion for a temporary restraining order, motion to proceed in forma pauperis, and a motion for appointment of counsel. (ECF Nos. 2, 3, 4.)

On November 13, 2026, Petitioner filed a response to Respondents' opposition. (ECF No. 10.) Petitioner asserts he withdrew his request for voluntary departure on October 12, 2026, before the request was approved by the IJ. (*Id.* at 2.) Petitioner alleges he has not departed because he withdrew his request and on November 6, 2026, he filed a Notice of Appeal and Motion to Reconsider with EOIR. (*Id.*)

Petitioner was not removed by the voluntary departure order deadline, and he has now been detained for nearly three months without an individualized determination as to whether he poses a danger to the community or a flight risk. (*See* ECF Nos. 1, 8.) Petitioner now challenges the lawfulness of his civil detention. (*Id.*)

## II. STANDARD OF LAW

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

## III. ANALYSIS

Petitioner claims his detention without a bond hearing violates the Fifth Amendment Due Process Clause. (ECF No. 1 at 5–17.) Respondents' answer does not address this claim. (*See* ECF No. 8.) Respondent instead argues Petitioner is "now detained as a condition of his grant of pre-conclusion departure[.]" (*Id.* at 1.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d

976, 990 (9th Cir. 2017). "[T]he Due Process Clause applies to all 'persons' within the United States, including noncitizens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693 (2001). These due process rights extend to immigration proceedings, including detention and deportation proceedings. *Id.* at 693–94; *see Demore v. Kim*, 538 U.S. 510, 523 (2003).

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

A. Liberty Interest

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690 (citing *Foucha v. Louisiana*, 504 U.S. 71 (1992)). "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025).

The Court finds Petitioner has a clear liberty interest in his continued freedom protected by the Due Process Clause.[4] Petitioner has lived in the United States for eight years, during which he built community ties and worked to support himself and his family. Even if he is

---

[4] The parties do not address the effect of either the lapsed departure deadline or Petitioner's request to withdraw voluntary departure on the government's detention authority. Even if Petitioner is now subject to a final removal order, it does not alter this Court's finding. Petitioner's claim is constitutional and it does not evaporate with a shifting basis for statutory authority. *See Alvarenga Matute v. Wofford*, No. 1:25-cv-01206-KES-SKO, 2025 WL 2996577, at *4 (E.D. Cal. Oct. 24, 2025) (A "change in the applicable statutory authority [for detention] does not render moot petitioner's due process claim"); *Doe v. Becerra*, 697 F. Supp. 3d 937, 943 (N.D. Cal. 2023) ("[J]ust as the "shall" in [§] 1226 gives way to as-applied due process challenges, so too must the 'shall' in [§] 1231(a)." (citing *Demore v. Kim*, 538 U.S. 526 (2003); *Nielsen v. Preap*, 586 U.S. 392 (2019))). Thus, even if 8 U.S.C. § 1231 now applies, Petitioner's liberty interest is not extinguished.

subject to removal or his freedom could be revoked by statute, Petitioner's liberty is still protected by the Due Process Clause. *See Hernandez*, 872 F.3d at 993, *Zadvydas*, 533 U.S. at 693. With a clear liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

B. Procedures Required

To determine what process is necessary to ensure any deprivation of Petitioner's protected liberty interest accords with the Constitution, the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. Despite his interest in maintaining his liberty, Petitioner has now been detained for nearly three months without any opportunity to be heard as to the justification of his detention. Petitioner's interest may be diminished slightly because he agreed to voluntary departure, however, an agreement to leave the country does not extinguish Petitioner's liberty while he is here. Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-cv-01536-DC-CKD, 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received adequate process, either pre- or post-detention. Because civil immigration detention is "nonpunitive in purpose and effect," a "special justification" must outweigh Petitioner's protected liberty interest in order for detention to comport with due process. *Zadvydas*, 533 U.S. at 690. While "[t]he government has legitimate interests in protecting the public and in ensuring that noncitizens in removal proceedings appear for hearings," Petitioner has received virtually no procedural safeguards to ensure his detention is reasonably related to those purposes. *Hernandez*,

872 F.3d at 990. Respondents do not argue Petitioner is a danger to the public or a flight risk. (*See* ECF No. 8.) Additionally, Respondents' own records show Petitioner has no criminal history in the United States. (ECF No. 8-3 at 3.) Therefore, the risk that Petitioner was detained without proper justification is high. *A.E. v. Andrews*, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025).

Finally, the government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Although the Court recognizes the Government's interest in immigration enforcement, that interest does not outweigh all procedural safeguards. Notice and custody determination hearings are routine processes for Respondents. Indeed, Respondents set forth no legitimate interest in continuing to detain Petitioner without such procedures. Any burden associated with the provision of these processes does not outweigh Petitioner's liberty interest and the risk of erroneous deprivation. Moreover, Respondents do not argue, and there is no evidence to suggest, Petitioner must be detained to voluntarily depart. The Court further notes that Respondents have not effectuated voluntary departure over the course of the last month, despite this Court dissolving its Order prohibiting transfer.

Upon consideration of the *Mathews* factors, the Court finds due process required Petitioner to receive a hearing before a neutral decisionmaker to ensure his detention was justified. Petitioner was not provided any notice nor pre- or post-deprivation hearing over nearly three months of detention. Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the Petition for Writ of Habeas Corpus. (ECF No. 1.) IT IS HEREBY ORDERED:

1. Respondents must IMMEDIATELY RELEASE Petitioner Gerber Ottoniel G.R. (A# 248-004-408) from custody. At the time of release, Respondents must return all of Petitioner's documents and possessions. Respondents shall file a **notice of compliance** with this

provision of the Court's Order within two **(2) court days** from the date of this Order.

2. Respondents are ENJOINED from re-detaining Petitioner absent a final order of removal or compliance with statutory and constitutional protections, including a minimum of seven-days' notice and a pre-deprivation hearing before a neutral factfinder where the government must establish by clear and convincing evidence that its interest in protecting the public or ensuring Petitioner appears at future immigration proceedings outweighs Petitioner's constitutionally protected interest in remaining free from detention such that no alternative to detention can mitigate that risk. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). At any such hearing, Petitioner shall be allowed to have counsel present. In the event Petitioner is, or becomes subject to, a final and executable order of removal, Respondents shall provide a minimum of ten-days' written notice of their intent to detain Petitioner for removal prior to detention. Such notice shall not be issued until the removal order becomes final and executable in accordance with 8 U.S.C. § 1231 and 8 C.F.R. § 1241.1.

3. Petitioner's Motion for TRO is DENIED as moot. (ECF No. 3.)

4. Petitioner's Motion to Proceed in Forma Pauperis is GRANTED. (ECF No. 2.)

5. Petitioner's Motion for appointment of counsel is DENIED as moot. (ECF No. 4.)

6. **The Clerk of the Court is directed to serve the Golden State Annex Detention Facility with a copy of this Order**.

7. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

DATE: November 19, 2026

TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE